696 P.2d 924

**SNOW'S AUTO SUPPLY, INC., a corporation, Plaintiff-Appellant,**

**v.**

**Lourence C. DORMAIER and Ruth Dormaier, husband and wife, Defendants-Respondents.**

No. 14561.

Court of Appeals of Idaho.

Feb. 28, 1985.

Gregory S. Staeheli (argued), Kain & Snow, Spokane, Wash., and Peter B. Wilson, Bonners Ferry, for plaintiff-appellant.

Lourence C. Dormaier, Moses Lake, Wash., pro se.

Ruth Dormaier, pro se.

BURNETT, Judge.

This lawsuit arises from the sale of a farm. The buyer alleges that the sellers misrepresented the number of cultivated acres. The principal issues are whether the buyer relied, and whether he had a right to rely, upon the sellers' representation. The district court ruled against the buyer on both points and entered summary judgment against him. With an exception noted below, we vacate the judgment and remand the case.

I

The following facts are undisputed. The sellers, Lourence and Ruth Dormaier, listed their farm with a real estate agency. The listing agreement recited that the property contained 392 acres, of which "approximately 375" were cultivated. The sellers later signed a modified agreement containing acreage figures of 389 and "approximately 370," respectively. The agency showed the property—and at some point also showed the modified listing agreement—to a prospective purchaser, Robert H. Snow, Jr., president of Snow's Auto Supply, Inc. On behalf of his corporation, Snow signed two earnest money offers prepared by the agency. Each offer stated that the farm contained "approx. 370 acres cultivated, based on seller's records." Because the parties failed to agree on various terms of sale, these offers expired. However, the parties remained in contact with each other. A few months later, the real estate agency drafted another earnest money offer, again referring to "approx. 370 acres cultivated, based on seller's records." This instrument was not executed but in two weeks, as a result of continued negotiations, the parties reached an agreement. The transaction was closed in accordance with terms outlined in a "letter of instruc-

tion" from Snow to an attorney who acted as the closing agent. This letter and the deed issued at closing were silent regarding acreage, cultivated or otherwise.

After taking possession of the property, Snow conducted a survey and discovered that the farm did not contain "approximately 370" cultivated acres. The actual figure was slightly less than 335. Snow's corporation sued for damages, including a proportionate refund of the purchase price. Snow asserted that the sellers' misrepresentation had been intentional and fraudulent. The Dormaiers denied fraud, contending that they had not known the actual acreage and that Snow had been told to consult records at the local Agricultural Stabilization and Conservation Service (ASCS) office. The sellers also filed a third-party complaint against the real estate agency, raising issues outside the scope of the present appeal.

When the sellers moved for summary judgment against Snow, the district judge confronted a potpourri of conflicting depositions and documentary evidence. Mr. Dormaier testified that despite having signed the listing agreements, he "couldn't vouch if [the cultivated acreage figures] were right or wrong." He claimed that the figures were inserted by one of the realtors at the agency. The realtor testified that he obtained acreage information from Mr. Dormaier. Another listing agreement on file at the agency, signed by a prior owner who had sold the farm to the Dormaiers, showed 340 cultivated acres. ASCS records, also showing about 340 acres in cultivation, bore Mr. Dormaier's signature.

The sellers testified that during negotiations with Snow, they told him the farm would be sold "by legal description" only, with no representation of acreage. Snow denied it. A tenant on the farm testified that he had given Snow and a realtor an estimate of "around 340" cultivated acres. Snow and the realtor denied that as well. Snow testified that he relied throughout the negotiations upon the representation of approximately 370 cultivated acres. He said he twice visited the ASCS office in order to obtain specific crop acreage and government allotment information, but the office had been closed both times. This testimony was consistent with that of an ASCS employee, who said she did not remember seeing Snow in the office until sometime after sale of the Dormaier farm.

II

Our standard for appellate review of a summary judgment is well known. The judgment will be affirmed if, but only if, there is no genuine issue of material fact and the prevailing party is entitled to the judgment as a matter of law. I.R.C.P. 56(c). In this case the district judge grounded his decision upon a requirement that any plaintiff suing for fraud or misrepresentation must prove reliance upon the matter alleged to be false. *See, e.g., Walker v. Nunnenkamp,* 84 Idaho 485, 373 P.2d 559 (1962) (summarizing all elements of the cause of action). The judge stated, as though it were beyond genuine dispute, that Snow had been "put on notice" of the actual cultivated acreage. The court found that Snow did not rely upon any alleged misrepresentation. In our view, this finding was inappropriate upon summary judgment. The record reveals a host of genuine issues regarding the knowledge of the parties, and who said what to whom, about the cultivated acreage on the farm. These issues, if material, would preclude a summary judgment.

But the district judge did not stop there. His decision also implicitly treated these factual issues as immaterial, holding that even if Snow had relied upon the representation of 370 cultivated acres, he had no right to do so. The judge's reasoning appears to have rested upon three hypotheses: (A) All references to the figure 370 in the modified listing agreement and in the earnest money offers signed by Snow became irrelevant when those offers expired. (B) The letter outlining terms for closing the transaction represented a contract to sell the farm "in gross." (C) Snow forfeited any right to rely upon the sellers' representation of acreage when he observed the

farm and attempted to obtain information from the ASCS. For reasons explained below, we believe that these hypotheses, although well stated by the district judge, were erroneous.

### A

It is, of course, true that when the signed earnest money offers expired, they lost their legal potential to ripen, upon acceptance, into contracts. But this does not mean that the subject of crop acreage vanished from the minds of the parties as they continued negotiating toward an eventual sale. These offers echoed the recital of "approximately 370" cultivated acres set forth in the modified listing agreement signed by the sellers and shown to Snow. A similar recital again appeared in the third earnest money offer, drafted by the real estate agency just two weeks before the parties reached a final agreement.

 When a listing agreement contains acreage information, and the realtor furnishes such information to a potential purchaser, it constitutes a binding representation by the seller to the purchaser. *Weinstein v. Sprecher,* 2 Wash.App. 325, 467 P.2d 890 (1970); *see also King v. H.J. McNeel, Inc.,* 94 Idaho 444, 489 P.2d 1324 (1971). Here, the crop acreage information was furnished to Snow by two means—putting it in the earnest money offers and showing Snow the listing agreement. Expiration of the signed offers did not extinguish the underlying factual representation that the farm contained approximately 370 cultivated acres. This representation continued until it was withdrawn or the sale was consummated. Upon the present record we cannot say that it was withdrawn.

### B

 The district court characterized the transaction as a sale "in gross." Generally speaking, a sale in gross—sometimes called a sale by the tract or a sale by contract of hazard—is one in which the boundaries of the property are identified but the quantity of land is unspecified or is deemed to be immaterial.

Generally, where the sale is in gross the parties are considered to have assumed the risk of a deficiency or excess in the quantity of land conveyed. [Citations omitted.] However, where the sale is by a specific quantity the purchaser is generally entitled to relief for the deficiency.

*Simpson v. Johnson,* 100 Idaho 357, 361, 597 P.2d 600, 604 (1979).

In this case, as noted earlier, the parties' ultimate agreement was not reduced to a written, mutually signed contract. Rather, the sale simply was closed in accordance with Snow's "letter of instruction." The letter referred to the property by legal description without reciting its total or cultivated acreages. However, the letter did not state that it constituted a contract nor that it embraced the entire understanding of the parties. Neither did it mention a sale "by legal description" only. The district court made no specific finding of fact that the parties mutually intended the sale to be in gross.

 In determining whether a sale is in gross, the intention of the parties is controlling. The question must be determined from provisions of the relevant documents—and from the surrounding circumstances if the documents leave the issue in doubt. *See* Annot., 1 A.L.R.2d 9, § 11 (1948). Here, because the "letter of instruction" does not purport to set forth the parties' full agreement, and because the surrounding circumstances are obscured by genuine disputes of fact, we believe the district court erred by holding, at this juncture, that the sale was in gross.

 For the purpose of guidance on remand, we note that even if a sale is in gross, the purchaser in some circumstances may be entitled to relief for an acreage deficiency. Where a seller fraudulently has misrepresented the acreage, relief is available regardless of whether the sale was in gross or by specific quantity. *See* Annot., 153 A.L.R. 4, 45 (1944). Moreover, though the purchaser in gross may have no remedy at law in the absence of fraud,

equity may intervene if a mistake concerning acreage is mutual and the deficiency is material. *See generally* Annot., 1 A.L. R.2d 9, § 23 (1948); 77 Am.Jur.2d *Vendor and Purchaser* § 90, at 276–77 (1975).

C

We next consider whether Snow forfeited any right to rely upon the sellers' representation of acreage when he viewed the farm and undertook, albeit unsuccessfully, to obtain acreage data from the local ASCS office. This question presents the difficult task of drawing a line between holding a seller accountable for his representations and holding the buyer to the terms of his original bargain. At common law, in cases involving personal property, a seller generally was held not liable for an innocent misrepresentation if the buyer had an equal opportunity to ascertain the truth, but was held liable for a fraudulent or reckless misrepresentation regardless of the buyer's opportunity. Annot., 61 A.L.R. 492 (1929). Where the seller engaged in fraud, it was no defense that he also referred the buyer to a source of truthful information. *Id.* at 514. Finally, as a corollary to the general requirement that reliance be proven in a fraud case, the seller was held not liable if the buyer, rather than relying upon the seller's representation, conducted his own investigation and the seller did nothing to impede him. *Id.* at 537.

The Idaho Supreme Court has maintained an uneasy ambivalence toward these common law rules, in real and personal property cases. In *Smith v. Johnson*, 47 Idaho 468, 276 P. 320 (1929), the Court held that where a seller of sheep innocently misrepresented their weight and the buyer conducted his own investigation, the seller bore no liability. Similarly, in *Petersen v. Holland*, 79 Idaho 63, 310 P.2d 810 (1957), the Court held that where the seller of a ranch misrepresented the range rights and the number of cattle, there was no liability because the misrepresentation had not been proven fraudulent and the buyer had conducted his own investigation.

However, in *Lanning v. Sprague*, 71 Idaho 138, 227 P.2d 347 (1951), the Supreme Court charted a different course. In that case a land buyer sued the seller for misrepresenting a boundary line. The Court said that a lack of fraud would not insulate the seller from liability:

Where one makes representations as to the boundary lines of property which he owns and is selling, and such statements are in fact false, and the boundary pointed out by him is not the true boundary and the vendee, relying on such false statements suffers a loss by reason thereof, the right of the vendee to recover damages is universally recognized. If the defendant did not know where the true boundary of the line in question was, he should not have taken upon himself to point out the same, and to make a definite and positive representation concerning it and which the state of knowledge did not enable him to make with verity and correctness.

\* \* \* \* \* \*

Even honesty in making a mistake is no defense as it is incumbent upon the vendor to know the facts.

71 Idaho at 143, 227 P.2d at 349–50. The direction charted in *Lanning* was followed in *Summers v. Martin*, 77 Idaho 469, 295 P.2d 265 (1956). There, the seller of a farm, without knowing the true facts, misrepresented the irrigated acreage. The buyer was held entitled to rescission even though the contract recited that the buyer had inspected the property and had not been influenced by any representation of the seller. Such contract language was deemed contrary to public policy.

The ambivalence of Idaho case law has continued to the present day, as exemplified by two recent decisions. In *Sorenson v. Adams*, 98 Idaho 708, 571 P.2d 769 (1977), the Supreme Court held that where the seller of a farm showed the buyer an ASCS document overstating the number of cultivated acres, a false representation had occurred. The Court reversed a district judge's involuntary dismissal of the buyer's suit for damages based upon a shortage of

actual acres. In response to a contention that the seller's conduct had been innocent, the Court cited *Lanning* and added the following comments:

> [T]he general rule is that "a vendor may be liable in tort for misrepresentations as to the area of land conveyed, notwithstanding such misrepresentations were made without actual knowledge of their falsity." [Citation omitted.] The reason, of course, is that the parties to a real estate transaction do not deal on equal terms. An owner is presumed to know the boundaries of his own land, the quantity of his acreage, and the amount of water available. If he does not know the correct information, he must find out or refrain from making representations to unsuspecting strangers.

> \* \* \* \* \* \*

> Finally, we observe that respondents ... challenge appellants' *right to rely* on the [ASCS] figures in light of their opportunity to check the figures themselves at the tax assessor's office, or by a survey of the land. The trial court did not address this particular element of fraud in its bench remarks. Such argument, however, has never found favor with this Court:

>> "False statements found ... to have been made and relied on cannot be avoided by the appellants by the contention that the respondents could have, by independent investigation, ascertained the truth.

>> "The appellants having stated what was untrue cannot now complain because the respondents believed what they were told. Lack of caution on the part of respondents because they so believed, and the contention that respondents could have made an independent investigation and determined the true facts, is no defense to the action." *Weitzel v. Jukich,* 73 Idaho 301, 305, 251 P.2d 542, 544 (1953). *And see, Lanning v. Sprague, supra.*

98 Idaho at 715, 571 P.2d at 776.

However, in *Faw v. Greenwood,* 101 Idaho 387, 613 P.2d 1338 (1980), the Court held that where the seller of a business made an inaccurate projection of future income, and the buyer made an independent examination of the business books, the seller was not liable to the buyer for losses subsequently sustained. The case might have been distinguished from *Sorenson v. Adams, supra,* and from other cases discussed above, because it involved a projection of future events rather than a representation of present facts. But the Court eschewed this distinction and stated:

> Appellants argue that the fact that they could have ascertained the truth by independent investigation is not a defense to the fraud action, citing *Sorenson v. Adams....* We think that is a correct statement of the law as far as it goes. However, when a purchaser is given the opportunity to conduct an independent investigation of the records *and does so,* it is generally held that he is not entitled to rely on alleged misrepresentations of the seller.

101 Idaho at 389, 613 P.2d at 1340 (emphasis added).

■ All of these cases demonstrate that Idaho has struggled with the task of holding a seller accountable while holding the buyer to his bargain. However, some common threads in the Idaho decisions may be discerned. If a seller engages in fraud, he will be liable unless the buyer actually examines sources of information used by the seller and draws his own independent conclusions. Conversely, if the buyer merely has an opportunity to examine such sources, but does not do so because he reasonably relies upon what the seller tells him, then he is entitled to relief from the seller's misrepresentation, whether made fraudulently or not.

■ In the present case, the record fails to show that Snow's reliance upon the sellers' representation of cultivated acreage would have been unreasonable. Concededly, Snow visited the farm before buying it. But the shape and topography of the farm were irregular and parts of it were wooded or adjacent to a stream. We

cannot say that an acreage deficiency would have been readily apparent. Neither are we persuaded that Snow's futile visits to the ASCS office barred him from relying upon the sellers' representation of cultivated acreage. There is, we believe, a distinction between an investigation conducted and an investigation attempted. When an investigation is conducted, it affords the buyer an independent basis to decide whether to purchase the property. When an investigation is attempted unsuccessfully and produces no independent information, the buyer is left to rely upon the seller's representations. As noted above, several Idaho cases have allowed buyers to obtain relief from seller misrepresentations despite an opportunity to investigate. We think it would be anomalous to afford a buyer less protection when he attempts to investigate than when he makes no use of an opportunity to do so. Accordingly, we conclude that Snow did not forfeit his right to rely upon the sellers' representation of cultivated acreage when he observed the farm and tried without success to examine the ASCS records.

We hold that the summary judgment, based upon rulings that Snow did not rely—and was not entitled to rely—upon the sellers' representation, must be set aside. Our holding is limited, as was the decision below, to the question of reliance. We intimate no view as to whether all elements of a cause of action for fraud or misrepresentation have been established. Neither do we reach the question whether, even if a misrepresentation occurred and Snow relied upon it, he is entitled to the damage remedy he seeks. These questions were not addressed by the district court and have not been fully briefed or argued on appeal. We will not discuss them sua sponte.

Finally, we note that the summary judgment not only dealt with Snow's claim of fraud or misrepresentation but also disposed of an unrelated claim by Snow for reimbursement of money he paid the tenant farmer in order to settle a leasing dispute. The circumstances surrounding that payment need not be detailed here. The district judge determined, in essence, that Snow entered into the settlement independently, before the sale of the farm was closed, and that the sellers assumed no obligation to fund any part of the settlement. We find no error.

With this exception, the summary judgment is vacated and the case is remanded for further proceedings consistent with today's opinion. Costs to appellant, Snow's Auto Supply, Inc. No attorney fees on appeal.

WALTERS, C.J., and SWANSTROM, J., concur.