726 P.2d 782

**John A. LOGAN and Myrle E. Logan, husband and wife, Plaintiffs-Appellants,**

**v.**

**GRAND JUNCTION ASSOCIATES, a limited partnership, and Henry W. Taylor, Jr., and Jane Doe Taylor, husband and wife, Defendants-Respondents.**

No. 16069.

Court of Appeals of Idaho.

July 31, 1986.

Petition for Review Denied Oct. 20, 1986.

Richard H. Greener and Stanley W. Welsh (argued) of Clemons, Cosho & Humphrey, Boise, for plaintiffs-appellants.

Bruce Collier of Kneeland, Laggis, Korb, Collier, Benjamin & Russell, Ketchum, for defendants-respondents.

SWANSTROM, Judge.

This is a suit for a deficiency judgment following a nonjudicial foreclosure sale of property subject to a deed of trust. I.C. § 45–1512. In a bench trial the district court held the Logans were not entitled to a deficiency judgment because they failed to establish the subject property's fair market value at the time of the trustee's sale. On appeal, the Logans assert the trial court improperly found that they had failed to meet their burden of proof because the experts were unable to agree on a particular figure as to the property's fair market value. We agree and reverse the district court's judgment.

The district court found the following facts. In November 1981 the Logans sold a motel, located in Grand Junction, Colorado, to Grand Junction Associates (hereafter "Grand Junction"). Grand Junction is a limited partnership and respondent Henry Taylor is the general partner thereof. All parties were experienced motel owners and operators. Grand Junction executed a promissory note for $800,000, secured by a deed of trust on the motel, to be applied toward the total purchase price $1,050,000. The note specified Grand Junction's monthly payment schedule, while the deed of trust provided for nonjudicial foreclosure. After making payments through February, 1984, Grand Junction defaulted with $850,-027.16 still owing. In July, 1984, a public trustee sold the motel at public auction pursuant to Colorado law. Only the Logans bid at the sale, reacquiring the motel for $430,000. For reasons not germane to this opinion, the suit, embodying the claim for a deficiency judgment, was brought in Idaho. The parties stipulated that Colorado law would apply. They also agreed that under Colorado law the limits on the amount of a deficiency judgment are the same limits set by Idaho law. *See* I.C. § 45–1512.

While the applicable law limits deficiency judgments on sales under a deed of trust to the entire amount of indebtedness secured by the deed of trust less the forced sale price, it further limits the deficiency judgment to the excess of the debt remaining at the time of sale over the property's fair market value at the time of sale. Therefore, to recover a deficiency the Logans had to prove at trial that Grand Junction's remaining debt of $850,027.16 exceeded the motel's fair market value at the time of sale. The district court held the Logans failed to prove it was more probable than not that the motel's fair market value lay within the range of their experts' testimony. The court first noted that the legal definition of fair market value is what a willing buyer would pay a willing seller (*see United States v. 3969.59 Acres of Land*, 56 F.Supp. 831 (D.C.Idaho 1944)). The court then stated that the income approach to valuation favored the buyer while the market data (comparative sales) valuation approach favored the seller and that substantial discrepancies between the two approaches, as well as between either of the two and the third (construction costs) approach, ought to be accounted for in order that the testimony not be mutually discrediting. The court held the Logans failed to establish the fair market value of the prop-

erty at the time of sale. The court therefore entered judgment for Grand Junction.

On appeal the Logans argue that the court should have accepted the income approach as a reliable method for determining fair market value of income producing property, such as the motel in issue. The Logans contend the trial court erred in failing to find some deficiency inasmuch as all the experts at trial, including Grand Junction's expert—when using the income approach—estimated the fair market value of the property at figures below Grand Junction's debt at the time of the forced sale. Grand Junction, on the other hand, argues the trial court did not abuse its discretion in weighing the credibility of the expert witnesses and rejecting all their estimates.

In general, experts rely on three methods in valuing property: (1) market data, including comparable sales; (2) cost of reproduction, taking depreciation into account (cost approach); and (3) capitalization of the property's potential or actual income (income approach). *Salt Lake County v. Kazura*, 22 Utah 2d 313, 452 P.2d 869 (1969).

With one exception in this case, each appraiser relied primarily or entirely on the income method. John Logan's testimony valued the property at $375,000, and alternatively at $430,000, when assuming a higher rate of annual income. A certified real estate appraiser from Denver estimated the value at $607,400 and alternatively, using the same capitalization and occupancy rate as some of the other witnesses, at $237,500. A certified public accountant estimated the value at $395,600. A real estate salesman from the Salt Lake City area, who viewed the motel, estimated its value at $390,000.

Grand Junction called an experienced appraiser from Grand Junction, Colorado. He testified that, using the income approach, the indicated value of the motel was $820,600. However, he primarily relied upon market data for his reported valuation of $808,400. The Logans' appraiser testified the income approach provided the most accurate valuation for income producing property such as the motel in issue. Indeed, each of the Logans' remaining witnesses, including John Logan, relied exclusively on the income approach to valuation.

The district court stated the income method was not reliable in and of itself because it looked primarily to what a willing buyer would pay, without really considering what a willing seller would accept. The court noted that the real estate salesman testified on cross examination that the market data (comparable sales) approach looked to what a seller would accept. Yet the court chose to ignore the two market value estimates of $650,000 and $808,400, offered by Logans' and Grand Junction's appraisers respectively.

■ Every income and market data estimate offered at trial fell below the amount of debt due at the time of sale, leaving a deficiency. The only estimates of value exceeding the debt amount were estimates based on the construction (cost) approach. Under this approach appraisers for the Logans and Grand Junction estimated the motel's value at $915,000 and $949,100, respectively. The court also rejected these figures. However, each of the appraisers had testified that the construction cost would exceed the fair market value of the property. They agreed that the construction cost approach, by itself, should not be used in this instance to determine fair market value. It is clear from the evidence adduced at trial that the district court was correct in not accepting construction cost as the equivalent of fair market value. *See, e.g., McFarland v. Joint School District No. 365 In Elmore and Owyhee Counties*, 108 Idaho 519, 700 P.2d 141 (Ct.App.1985).

[The three valuations] methods are usually not employed separately and in isolation from each other, but are considered and compared together, with *varying* emphasis placed thereon, depending upon the individual circumstances and the *available information*, in arriving at a *composite* appraisal of value. [Emphasis added.]

*Salt Lake County v. Kazura,* 452 P.2d at 871.

The district court critically noted that the testimony failed to focus on what a willing buyer would pay a willing seller. However, we note the parties offered valuations under the income approach which may best indicate what a willing buyer would pay. The income approach appears particularly suited to this case which involves income producing property. The parties also offered valuations under the market data approach, which may best indicate what amount a willing seller would accept.

When the final valuations of all the appraisers are considered, each results in *some* deficiency being shown. The mere fact that the experts—even the experts for the plaintiffs—were unable to agree on a particular figure is not a sufficient basis for rejecting all of the experts' testimony or for holding that the Logans failed in their burden to prove a deficiency. We believe that the district court committed reversible error in so holding. Accordingly, we reverse the judgment.

Substantial evidence submitted at trial discloses a range of value within which the court may place the fair market value of the motel. Therefore, we remand the case for the district court to reconsider, compare and weigh the evidence as a fact finder and to determine the fair market value of the property in question. Costs to appellant. No attorney fees awarded.

WALTERS, C.J., and BURNETT, J., concur.