749 P.2d 1020

**Obed F. LAWRENCE and Margaret Lawrence, husband and wife, Plaintiffs–Appellants,**

v.

**John Michael FRANKLIN, a single man, Defendant–Respondent.**

No. 16225.

Court of Appeals of Idaho.

Feb. 2, 1988.

896

---

James R. Gillespie of Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for plaintiffs-appellants.

No appearance by defendant-respondent.

SWANSTROM, Judge.

Obed and Margaret Lawrence are the owners of a small neighborhood grocery in Boise, Idaho. They brought this action against two persons who entered into an agreement to purchase the store, its equipment and inventory. Alleging that the buyers were in default of the sale agreement, the owners sued to cancel the con-

tract and to obtain damages. The district court, trying the case without a jury, declined to award damages. The owners brought this appeal. By stipulation, one of the buyers was dismissed from the appeal. Counsel for John Franklin, the other buyer, withdrew. Franklin has made no further appearance in this appeal. We hold that the sellers did prove entitlement to some, but not all, of the damages they sought. Therefore, we affirm in part, reverse in part and remand.

This case was tried on stipulated facts and documentary evidence. In August 1981, Franklin and his partner entered into an agreement to purchase the Hollywood Market from the Lawrences. The agreement provided that the buyers would maintain insurance, would purchase certain amounts of inventory, and would continue to run the store as a small neighborhood grocery. In the event of default, the buyers had seven days to cure. If defaults were not cured, the sellers would be entitled to repossess the property.

In July 1982, the sellers notified the buyers they were in default. The notice listed six points on which the buyers had failed to comply with the sale agreement. The sellers brought suit against the buyers, seeking damages and repossession of the property. On October 8, 1982, the store was partially destroyed by fire. The sellers sent a second notice of default alleging that the buyers also had failed to make the October installment payment due under the sale agreement.

A settlement was reached with the insurer of the store. Insurance payments were tendered for loss of personal property, damage to the building, loss of inventory, and for business interruption. In April 1983, the parties agreed in writing that the buyers would return the store to the sellers and would assign the insurance proceeds for property damage to the sellers. This agreement stated that no rights or remedies of the parties arising from the 1981 sale agreement or the pending litigation were prejudiced by the agreement concerning insurance proceeds. Thus, this agreement appears to have been intended to resolve only the rights to possession of the store and to the insurance proceeds.

The sellers undertook restoration of the property. The insurance proceeds were not adequate to cover the cost of repairs and replacements made by the sellers. The sellers filed an amended complaint seeking damages from the buyers equal to the difference between the insurance proceeds and the sellers' expenditures, as well as damages for loss of business.

The threshold question is whether the buyers did, in fact, breach the agreement. The default notices alleged that the buyers had failed, among other things, to maintain required inventory levels, to utilize specified wholesale accounts for inventory purchasing, to pay real estate taxes, and to make regular installment payments. The notices also alleged the buyers had failed to buy and pay for inventory items on a specified wholesale account as required by the sale agreement. Franklin admitted not doing so after August, 1982.

The sale agreement further required the buyers to pay the taxes from the date of possession. Franklin admitted not paying the real estate taxes due in December, 1982. He had not paid the personal property taxes for 1983. The buyers made no installment payments due under the sale agreement after September, 1982. These stipulated facts and admissions clearly establish that the buyers were in breach of the sale agreement.

The next issue is the sellers' entitlement to damages for the breach. Here the contract contained no provisions that all payments made could be retained as liquidated damages in the event of a default and forfeiture. The district court held—and this holding has not been challenged on appeal—that the contract, the notices of default and the amended complaint allowed the sellers to cancel the contract and recover their actual damages for its breach.

As we have noted, after the suit was filed the parties agreed that possession of the store property and the insurance proceeds, except the insurance payment for "business loss," would be given to the sellers. Thus, as the district court held, the

buyers elected not to go forward with the purchase and to use the insurance proceeds themselves in repairing and restoring the property. The sellers elected to take the insurance proceeds in lieu of their right to compel the buyers to continue to perform under the contract. Both parties expressly agreed that this transfer of possession and of the insurance proceeds would not prejudice any other rights or remedies of the parties. The sellers proceeded to repair and restore the property, using the insurance proceeds for this purpose. Having expended more than the insurance proceeds for repairs to the building and equipment, and for replacing personal property and inventory, the sellers sought recovery of the difference as damages. The sellers also sought damages totalling $11,065 for loss of business during a six-month interval following the fire when the buyers continued in possession of the premises.

On the date set for trial, the parties stipulated to a set of facts read into the record by one of the attorneys. Exhibits were admitted into evidence, subject to the buyers' objection as to relevancy, showing the sellers' expenditures for repairs and replacement of property. Later, the district judge ruled that the sellers were entitled to all of the insurance proceeds, including $1,720 paid for business interruption, but he held that the sellers did not prove entitlement to any additional damages. The judge stated:

> I fail to understand how in fact or law the proof of the sellers that they expended certain sums to restock the inventory, repair the premises, and for miscellaneous expenditures in addition to the insurance proceeds received establishes that the buyers breached the sale agreement *as to these matters* or establishes that the net amounts so calculated constitute damages resulting from such alleged breaches. [Emphasis added.]

However, as we have indicated, the record does show other breaches of the contract. ■ Elsewhere in its memorandum decision, the district court correctly stated the measure of a seller's damages for breach of contract for the sale of realty, when the contract is cancelled due to the buyer's breach. It is the difference between the contract price and the market value of the property at the time of the breach, plus the rental value for the period of possession by the buyer, but offset by the contract payments and taxes paid by the buyer. *Anderson v. Michel*, 88 Idaho 228, 398 P.2d 228 (1965); *Graves v. Cupic*, 75 Idaho 451, 272 P.2d 1020 (1954); *Koch v. Glenn*, 53 Idaho 761, 27 P.2d 870 (1933).

The damages sought by the sellers in this case can be grouped into five categories: (1) inventory losses, (2) loss of business, (3) loss of personal property and equipment, (4) repairs to the building, and (5) miscellaneous expenses. As noted, the evidence at trial consisted of stipulated facts and documentary evidence. The documentary evidence of damages consisted of summaries of damages claimed in the five categories mentioned, plus attached photocopies of canceled checks and invoices.

■ We agree with the trial judge's holding that the sellers did not prove entitlement to damages, in addition to the insurance proceeds, for loss of personal property and equipment, repairs to the building, and miscellaneous expenses. These are not measures of the difference between the contract price and the market value of the store at the time of the breach. The contract price, $77,500, was broken down by the sale agreement into three categories of property, stating an agreed value for each category, as follows:

| | |
|---|---|
| Real Estate | $32,000 |
| Fixtures and Equipment | 23,500 |
| Inventory | 22,000 |
| Total | $77,500 |

Thus, consistent with the proper measure of damages, the sellers could have recovered for losses occurring in any one of these categories due to a breach of the sale agreement. As to the real estate, for example, if the sellers had proved that the real estate after the breach had a fair market value of less than $32,000, the sellers would have established an item of damages equal to the difference between the agreed contract price and the fair market value. However, the sellers' proof only

consisted of the amount of insurance proceeds paid to them for damage to the building, and the amounts they expended to make repairs. The amounts expended for repairs may or may not have been equivalent to the difference between the contract value and the fair market value. On the other hand, the insurance proceeds may have been equivalent to the difference. But on the proof presented, the trial court had no way to determine if the sellers had incurred a loss in the value of the real estate caused by the buyers breach. There was no allegation and no proof that the buyers had failed to insure the "improvements on said premises against loss by fire to their insurable value," as required by the contract.

■ The same deficiencies existed in the sellers' proof of their claimed loss of personal property and equipment. Again the sellers proved only the amount of insurance proceeds paid to them for items in this category and the amounts they expended to replace and repair equipment and personal property that had been included in the sale.

■ The sellers also claimed damages for business interruption. The insurer paid $1,720 under a business interruption clause of the policy for a period of one month. The sellers claimed they were entitled to these proceeds and to a similar amount from the buyers for five additional months —that is, an additional $9,345. The court awarded only the insurance proceeds to the sellers. We think the court acted correctly. We acknowledge that in addition to recovering the difference between the contract price and the market value of the property at the time of the breach, our courts have allowed a seller to recover the rental value for the period of possession by the buyer offset by the contract payments and taxes paid by the buyer. *See, e.g., Anderson v. Michel, supra.* However, the stipulated facts and the documentary evidence submitted do not establish why the sellers are entitled to the sum of $9,345 for the claimed "loss of use" or "business interruption" for the period of time, following the fire, when the buyers remained in possession. No evidence was presented by which the court could determine the fair rental value of the store, fixtures and equipment. We find no error by the trial court in denying this claim.

■ Finally, we turn to the claim for inventory loss. When the parties entered into the sale agreement they valued the inventory at $22,000. The sale agreement required the buyers to purchase approximately $2,000 of inventory each week to maintain the business. In a deposition, Franklin admitted that these weekly levels had not been maintained. Although the written contract is not clear on this point, at trial the parties stipulated that the contract required the buyer to maintain a $22,000 "inventory balance" in the store. It was further stipulated that the "difference between the amount of inventory at the time of the fire and the minimum contract balance [was] $7,658.36." We think this stipulation showed that the sellers suffered a loss of $7,658.36 because of the buyers' failure to maintain the inventory at the level required by the contract. The final inventory reflected the agreed value of the inventory as of October 1981, when the buyers ceased making contract payments. Thus the contract value of the inventory and the agreed value at the time of the breach were proven. We conclude that the district court erred in failing to award damages in the amount of $7,658.36 for the buyers' breach of the sale agreement.

Accordingly, we remand for entry of judgment in this amount. Costs to appellants. No attorney fees awarded.

BURNETT and McFADDEN, JJ., concur.