846 P.2d 904

The **MARGARET H. WAYNE TRUST** and Margaret H. Wayne, Trustee, Plaintiffs/Respondents,

v.

**Allan G. LIPSKY, Defendant/Appellant.**

No. 19030.

Supreme Court of Idaho, Twin Falls, April 1992 Term.

Feb. 12, 1993.

Hawley, Troxell, Ennis & Hawley, Boise, for defendant/appellant. Phillip M. Barber, argued.

Kneeland, Korb, Collier & Benjamin, Ketchum, for plaintiffs/respondents. Bruce J. Collier, argued.

REINHARDT, Justice Pro Tem.:

This contract dispute arises from a Real Estate Purchase and Sale Agreement entered into between the plaintiff/respondent Margaret H. Wayne Trust ("Wayne" hereafter), as seller, and the defendant/appellant Allan G. Lipsky ("Lipsky" hereafter) as purchaser. The sale was not closed, and Wayne brought an action for damages which was tried without a jury. Lipsky appeals from the Court's judgment in favor of Wayne.

## FACTS

The Margaret H. Wayne Trust owned a condominium in Ketchum, Idaho, which was listed for sale by its Trustee, Margaret Wayne, who is a licensed real estate salesperson. The property was shown to Mr. Lipsky by Alan Reynolds, an associate real estate broker for Sun Valley Realty.

Lipsky (who is also a licensed real estate salesman) made three offers to purchase the Wayne property, using a standard printed real estate purchase and sale agreement (earnest money agreement) form provided by Mr. Reynolds. Mrs. Wayne rejected the first offer as too low; the second offer was for a higher amount, but failed because it was contingent on financing which did not occur. The third agreement, dated September 23, 1987, was also on a standard form prepared by Mr. Reynolds and mailed to Lipsky for his signature. It provided for Lipsky to pay $1,000 in earnest money and contained a liquidated damages clause. This offer was made subject to the acceptance of seller on or before September 28; however, Lipsky felt that time was inadequate and changed the acceptance date to October 2, 1987, placing his initials by the change before returning the form to Reynolds.

In anticipation of receiving an acceptable offer from Lipsky, Mrs. Wayne had moved out of the condominium prior to leaving on a vacation. She returned on October 12, 1987 and signed the agreement, also initialing the change in acceptance date. Upon receiving the signed agreement, Reynolds telephoned Lipsky and told him that the offer had been accepted. Whether Reynolds informed Lipsky at that time that the acceptance was ten days late is unclear. Reynolds testified that his normal procedure would be to mail a copy of the agreement to the purchaser once it was accepted. Closing was set for November 2, 1987, and Lipsky proceeded to insure the property, obtain a bank loan, and negotiate through Reynolds for the purchase of some of Wayne's furniture.

On October 19, the stock market began a precipitous decline which caused Lipsky to reconsider his decision to invest in a vacation home. Sometime in late October, he called Reynolds and informed him that he did not intend to close the purchase and would forfeit the earnest money he had paid, but would be interested in renting the condominium for six months at $1,000 per month. He also stated that he did not have a copy of the executed agreement and

asked Reynolds to mail a copy to him. On the proposed closing date, Lipsky again spoke with Reynolds to confirm the fact that he did not intend to buy the property and would release the earnest money. During that conversation, Lipsky for the first time mentioned the fact that Mrs. Wayne had not accepted within the time period required by the agreement.

Wayne declined to rent the unit to Lipsky, and also refused to accept the earnest money as liquidated damages, choosing instead to file a suit for specific performance. She subsequently sold the property and proceeded with a claim for actual damages she alleged were caused by Lipsky's breach. After a one-day court trial, a decision issued which incorporated findings of fact and conclusions of law proposed by Wayne, and a judgment was entered in favor of Mrs. Wayne.

## ISSUES ON APPEAL

1. Did the trial court err in its Findings of Fact and Conclusions of Law that Mr. Lipsky waived the late acceptance by Mrs. Wayne?

2. Did the trial court err in ruling that the Earnest Money agreement did not limit Mrs. Wayne's ability to recover money damages?

3. Did the trial court err in ruling that the liquidated damages clause contained in the Earnest Money Agreement could be avoided as a penalty?

4. Did the trial court err in awarding damages to Mrs. Wayne which represented a commission for the broker's (Mr. Reynolds) services?

5. Did the trial court err in failing to deduct the reasonable rental value of Mrs. Wayne's Sagehill property from the damages she allegedly suffered?

## I

## THE TRIAL COURT DID NOT ERR IN ITS FINDING THAT LIPSKY WAIVED THE LATE ACCEPTANCE

■ Based on its findings of fact that Lipsky knew shortly after 10/12/87 that Mrs. Wayne had executed the agreement ten days late, the trial court ruled that Lipsky had waived the right to claim that Wayne had not timely accepted the agreement. Lipsky maintains that there was not substantial evidence to support that finding and that it should be reversed. This Court has defined waiver as a voluntary, intentional relinquishment of a known right or advantage. The party asserting the waiver must show that he acted in reasonable reliance upon it and that he thereby has altered his position to his detriment. *Brand S. Corp. v. King*, 102 Idaho 731, 639 P.2d 429 (1981). To establish a waiver, the intention to waive must clearly appear. *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982).

Whether Lipsky intended to waive depends upon when he actually became aware of the fact that Wayne's acceptance of his offer was late. The record shows Lipsky testified that he did not realize that the acceptance was not timely until late in October; however, this conflicts with Reynolds' testimony that a copy of the agreement was mailed to Lipsky on October 12.

■ Waiver will not be inferred except from a clear and unequivocal act manifesting an intent to waive, or from conduct amounting to estoppel. *Jones v. Maestas*, 108 Idaho 69, 696 P.2d 920 (Ct.App.1985). We agree with the trial court that the evidence that Lipsky proceeded to obtain insurance and a bank loan, make inquiries about a maintenance service, and negotiate for the purchase of Wayne's furniture demonstrated his desire to go ahead with the purchase of the condominium. This desire was communicated to the seller through the buyer's conduct.

The task of weighing conflicting evidence rests with the trial court, and that court's findings based upon substantial and competent, though conflicting, evidence will not be disturbed on appeal. *Price v. Aztec Limited, Inc.*, 108 Idaho 674, 701 P.2d 294 (Ct.App.1985). Because there was sufficient evidence to support the trial court's conclusion, we will not set this finding aside. The record supports the district court's finding that Lipsky had, by his con-

duct, waived his right to avoid the contract, and we will not disturb it.

## II

## THE TRIAL COURT DID NOT ERR IN RULING THAT THE EARNEST MONEY AGREEMENT DID NOT LIMIT WAYNE'S ABILITY TO RECOVER MONEY DAMAGES

The central issue in this action is whether the presence of a liquidated damage clause in an earnest money agreement should preclude the nondefaulting party from recovery of actual damages suffered when the other party breaches the agreement. The trial court found that Mrs. Wayne could sue for actual damages because the liquidated damage clause expressly preserves seller's "other remedies." We agree.

In its ruling on Wayne's ability to recover her actual damages, the trial court held:

The language of the agreement allows the nonbreaching party the option of either retaining earnest money as liquidated damages or seeking any other remedies available. The agreement does not limit the nonbreaching party only to the retention of the earnest money as liquidated damages. If the nonbreaching party does not accept the earnest money as liquidated damages, the nonbreaching party is entitled to seek actual damages and any other relief allowed.

The liquidated damage clause in question is contained in the seller's remedies clause, which reads as follows:

If Seller executes this agreement, and title to said premises is marketable and insurable and the Buyer neglects or refuses to comply with the terms or any conditions of sale within five (5) days from the date on which said term or condition is to be complied with, *then the earnest money shall be forfeited and considered as liquidated damages to Seller*, and Buyer's interest in the premises shall be immediately terminated. The broker shall pay from said earnest money the costs of title insurance, escrow fees, attorney's fees and any other expenses directly incurred in connection with this transaction, and the remainder shall be apportioned one-half to the seller and one-half to the broker, provided the amount to broker does not exceed the commission. *Such forfeiture and acceptance by Seller or Broker of the earnest money as liquidated damages does not constitute a waiver of other remedies available to Seller or Broker.* (Emphasis added.)

The parties urge drastically different interpretations of this poorly-drafted clause, and each cites cases from other jurisdictions which interpret liquidated damage clauses which are similar, but not identical, to the one at issue.

Lipsky, the buyer, contends that the provision that "the earnest money *shall be forfeited* and considered as liquidated damages to Seller" should be interpreted to mean that if the buyer defaults, the seller MUST accept the earnest money as a liquidation of all money damages, and that the "other remedies" which the clause purports to preserve must be limited to a suit for specific performance. The seller's position is that the phrase later in the clause which states that "such forfeiture and acceptance by Seller or Broker of the earnest money as liquidated damages does not constitute a waiver of other remedies available to Seller or Broker" indicates that the intent was that seller's acceptance of the earnest money as liquidated damages would be optional, with the seller preserving her right to seek any other remedies available to her.

■ In construing this instrument, we must consider it as a whole and give meaning to all its provisions to the extent possible. *Magic Valley Radiology Associates, PA. v. Professional Business Services, Inc.*, 119 Idaho 558, 808 P.2d 1303 (1991); *Wing v. Martin*, 107 Idaho 267, 688 P.2d 1172 (1984); *Moss v. Mid–American Fire and Marine Ins. Co.*, 103 Idaho 298, 647 P.2d 754 (1982).

■ We agree with the trial court's interpretation that this clause preserved the seller's right to seek actual damages. In spite of the fact that the clause is poorly

written, it is clear from a reading of the agreement as a whole that the seller has the option of accepting the forfeited earnest money as liquidated damages, bringing an action for recovery of actual damages, or seeking specific performance. As stated in Professor Dobbs' treatise on damages:

> The presence of a liquidated damages provision does not automatically prevent the vendor from claiming his actual damages, and in the absence of any indication to the contrary, it probably should be assumed that the vendor is free to claim liquidated or actual damages, as his option.

Dobbs, Handbook on the Law of Remedies, § 12.11 p. 855.

The clause providing the buyer's remedies in the event of default by the seller contains similar preservation of remedies language:

> It is agreed that if the title to said premises is not marketable, or cannot be made so within thirty (30) days after notice containing a written statement of defects is delivered or mailed to the seller, or if the seller, having approved said sale fails to consummate the same as herein agreed, such failure shall constitute a default and *the Earnest Money shall be returned to the buyer and seller shall pay for the costs of title insurance, escrow and legal fees, if any. Buyer's acceptance of the Earnest Money does not constitute a waiver of other remedies available.* (Emphasis added.)

If we were to agree that the preservation of remedies clause only preserved the right to seek specific performance, a buyer could be left in a position where his only remedy would be the return of his own deposit. That reading would clearly leave the buyer without an adequate remedy in cases where specific performance is impossible, such as when the seller is unable to provide marketable title. Such an interpretation could potentially leave a buyer without any money damages whatsoever in the event of a breach by the seller, therefore we decline to adopt this view.

■ Our interpretation is influenced by the fact that this is a standard printed form agreement used in innumerable home purchases every day throughout the state of Idaho. We think it is important to remember that in the normal transaction for the purchase of a home, the amount of the deposit is seldom truly negotiated by the parties with any thought as to whether it is a reasonable pre-estimate of the actual damages likely to be incurred in the event of a default, and thus we are unwilling to interpret the clause in question as precluding the seller from electing to seek actual damages when the amount deposited is inadequate compensation for the breach. This is not to say, however, that an agreement for the purchase of real property may not be clearly drafted so as to limit the seller's remedy to retaining the earnest money deposit as liquidated damages; we merely find that this clause, even though inartfully drafted, did preserve Wayne's right to choose among retention of the earnest money, suit for actual damages, or action for specific performance.

## III

### THE TRIAL COURT DID ERR IN RULING THAT THE LIQUIDATED DAMAGES CLAUSE CONTAINED IN THE EARNEST MONEY AGREEMENT COULD BE AVOIDED AS A PENALTY

The trial court ruled that the liquidated damages clause was not enforceable against the seller for two reasons: first, because it constituted a penalty, and second because damages were not difficult to determine and the amount of liquidated damages did not bear a reasonable relationship to actual damages anticipated to be incurred.

■ To be enforceable, liquidated damages provisions must meet two separate requirements. First, an accurate determination of the actual damages that might be incurred upon breach must be difficult or impossible to determine. Second, the amount of the liquidated damages must bear a reasonable relationship to the actual

damages anticipated to be incurred. *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 812 P.2d 253 (1991); *Clampitt v. A.M.R. Corp.*, 109 Idaho 145, 706 P.2d 34 (1985); *McEnroe v. Morgan*, 106 Idaho 326, 678 P.2d 595 (Ct.App.1984); *Nichols v. Knowles*, 87 Idaho 550, 394 P.2d 630 (1964); *Graves v. Cupic*, 75 Idaho 451, 272 P.2d 1020 (1954).

 The trial court was correct in stating that a liquidated damage clause will not be enforced if it is found to be a penalty. Typically, a defaulting buyer objects to enforcement of a liquidated damage clause because he believes the amount forfeited is too high. In this case, we are confronted with a nondefaulting seller who claims that the amount of liquidated damages is too low. The issue of whether a seller can avoid a liquidated damage clause which provides an inadequate recovery has never before been addressed by this Court, but it was dealt with by the Supreme Court of Washington in *Mahoney v. Tingley*, 85 Wash.2d 95, 529 P.2d 1068 (1975), which held:

> A penalty exists where there is an attempt to enforce an obligation to pay a sum fixed by agreement of the parties as a *punishment* for the failure to fulfill some primary contractual obligation. 5 S. Williston, Contracts § 770, at 641 (3d ed. 1961). In this case, it is not the party in default who seeks relief from an excessively high liquidated damages provision. Rather the provision operates to limit the recovery of the party who incurred a loss as a result of the other parties' breach. There being no element of punishment involved, it cannot be said that plaintiff is being penalized in any sense.

529 P.2d at 1070 (emphasis in original). Under the circumstances of this case, Wayne is not being penalized in any way. We find that limiting Wayne's recovery to the amount of earnest money deposited would not constitute a penalty within the meaning of the cases cited, and therefore reverse the trial court's ruling that the liquidated damages clause was unenforceable as a penalty.

 The trial court also held that the liquidated damage clause was unenforceable because an accurate determination of the damages that might be incurred upon breach was not difficult or impossible and the amount of the liquidated damages in this case did not bear a reasonable relationship to the anticipated damages. We do not agree.

 Wayne argues that because the measure of damages is the difference between the contract price and the fair market value of the property at the time of breach, the amount of damages was not difficult or impossible to calculate. We believe that the fact that there is an accepted means of calculating damages does not necessarily mean that the amount of damage will be easily determined. Even with the testimony of expert witnesses, it is frequently quite difficult to determine the fair market value of real property (see *Logan v. Grand Junction Associates*, 111 Idaho 670, 726 P.2d 782 (Ct.App.1986)). If this approach were adopted, a real estate contract could never contain an enforceable liquidated damages clause.

## IV

### THE TRIAL COURT ERRED IN AWARDING DAMAGES WHICH REPRESENTED A COMMISSION FOR THE BROKER'S SERVICES

In spite of the fact that Wayne did not seek recovery for a commission to Reynolds and presented no evidence that Reynolds sought payment, the trial court granted $4,460 to Mrs. Wayne for "real estate commission owed" to Reynolds. We believe that the trial court erred in this regard.

 Idaho has, in the past, adopted the traditional rule that a broker earns his commission when he procures a buyer who is ready, willing and able to purchase on terms acceptable to the seller. *Rogers v. Hendrix*, 92 Idaho 141, 438 P.2d 653 (1968). A growing number of courts have, however, added a requirement that there must be a closing of title for the broker to receive a commission, adopting the rationale of *Ells-*

*worth Dobbs, Inc. v. Johnson,* 50 N.J. 528, 236 A.2d 843 (1967):

> When a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract.

236 A.2d at 855. This position was addressed by our Court of Appeals in *Strout Realty, Inc., v. Milhous,* 107 Idaho 330, 689 P.2d 222 (Ct.App.1984), where a seller under an installment land contract claimed that he was not liable for the commission because the buyer defaulted before he had fully performed and was therefore not "ready, willing, and able." In analyzing the point in time when the ability of the buyer is to be determined, the Court of Appeals employed the *Ellsworth Dobbs* rule in finding that the commission had been earned at the time the transaction was closed. We also adopt the three-part test set out in *Ellsworth Dobbs* as the general rule to determine when a real estate broker earns his commission. Because the transaction between Lipsky and Wayne was never closed, Reynolds did not earn his commission.

■■■■ The adoption of this rule does not, however, alter the obligation to pay the commission if the sale is not completed due to the fault of the seller. This is also recognized in *Ellsworth Dobbs* where the court, after setting out the three-part test, went on to say:

> If the contract is not consummated because of lack of financial ability of the buyer to perform or because of any other default of his ... there is no right to commission against the seller. On the other hand, if the failure of completion of the contract results from a wrongful act or interference of the seller, the broker's claim is valid and must be paid. In short, in the absence of default by the seller, the broker's right to commission against the seller comes into existence

only when his buyer performs in accordance with the contract of sale.

236 A.2d at 855.

Paragraph 15 of the agreement executed by Lipsky and Wayne provides:

> In the event of default in the performance of the terms and conditions of this agreement by either party, the defaulting party agrees to pay the broker the commission which the broker is entitled to receive from the Seller for his/her services in connection with the sale of the premises.

It is clear that Wayne, as the non-breaching party, is not liable for any commission to Reynolds under this provision of the agreement. In determining whether Lipsky is liable for payment of a commission to Reynolds, we note that Lipsky joined Reynolds in this action with a third-party complaint, alleging that Reynolds had represented that Lipsky would only be required to forfeit his earnest money if he chose not to close the sale. Reynolds cross-claimed for the commission he claimed was due from Lipsky as the defaulting party. Prior to trial, Lipsky and Reynolds reached a settlement and dismissed these claims. We hold that Reynolds' claim for a commission on this transaction has been extinguished, and that under the circumstances, it was error for the trial court to award a sum for Reynolds' commission to Wayne.

The trial court calculated Wayne's actual damages as follows:

1. $4,000 difference between Lipsky's offer and price for which the unit was sold approximately one year later;

2. Real property taxes of $1,770.62;

3. Assessment by Homeowner's Association of $1,094.34;

4. Assessment by Sun Valley/Elkhorn Association of $468;

5. Utilities in the amount of $1,898.96;

6. Hot tub repairs and maintenance $896.57;

7. Interest payments on the bank loan $12,023.19;

8. Commission owed to Reynolds $4,460;

9. Interest, attorney's fees, and costs.

10. Reduction of $750, as a set-off for $500 rent actually received by Wayne and $250 for the value of time Wayne let friends stay in the condominium at no cost.

 We believe this calculation to be error. As argued by Wayne herself, the usual measure of actual damages for a purchaser's breach of contract for sale of realty is the difference between the contract price and the market value of the property at time of breach, plus rental value for any period of possession by the purchaser. *Lawrence v. Franklin*, 113 Idaho 895, 749 P.2d 1020 (Ct.App.1988); *Smith v. King*, 100 Idaho 331, 597 P.2d 217 (1979). The trial court erred in awarding the difference between the contract price and the price Mrs. Wayne obtained on resale a year later. As stated in Dobbs' treatise on damages:

> The general rule applied where the purchaser under a real estate contract refuses to go through with his purchase is that he is liable for the vendor's loss of bargain, plus any appropriate consequential damages. This means the vendor will recover the difference between the market value and the contract price on the date of breach or on the date at which he regains possession of the land.... The rule is that the vendor's loss is measured by the market price of the property as of breach date, not the price he obtained on resale at a later date. The price obtained on resale may, however, be sufficient evidence of the market value at the date of breach, provided market conditions are similar and the time lapse between the date of breach and the resale is not great.

Dobbs, *supra*, § 12.11 at page 853.

 It was also error for the trial court to award Wayne the carrying costs for the time period between the breach and the resale. The damages for which Lipsky is liable must be measured at the time of the breach, and where he was never in possession of the property, Mrs. Wayne may not recover for the interest on the mortgage, the taxes, and the utilities. Dobbs, *supra;* *Allen v. Kingdon*, 723 P.2d 394 (Utah, 1986). We therefore remand this matter for a recalculation of the damages which should be awarded to Mrs. Wayne.

## V

## THE TRIAL COURT DID NOT ERR IN FAILING TO DEDUCT THE REASONABLE RENTAL VALUE OF THE PROPERTY

Lipsky claims that Wayne had a duty to rent the unit to mitigate her losses, and that the trial court erred when it allowed a set-off for only $750 for rental of the unit between the breach and the resale.

 The duty to mitigate, also known as the "doctrine of avoidable consequences," provides that a plaintiff who is injured by actionable conduct of a defendant is ordinarily denied recovery for damages which could have been avoided by reasonable acts, including reasonable expenditures, after actionable conduct has taken place. *O'Neil v. Vasseur*, 118 Idaho 257, 796 P.2d 134 (Ct.App.1990); *Davis v. First Interstate Bank of Idaho, N.A.*, 115 Idaho 169, 765 P.2d 680 (1988). Whether the action taken by Mrs. Wayne was reasonable was a question of fact for the trial court, and will not be overturned on appeal unless found to be clearly erroneous. Idaho Rules of Civil Procedure 52(a). Because there was no evidence presented to refute Mrs. Wayne's claim that the unit would·have been more difficult to sell if it had been rented, this finding will not be disturbed on appeal.

## CONCLUSION

We affirm the trial court's finding that Lipsky waived Wayne's late acceptance, and its holding that the Earnest Money agreement did not limit Wayne's ability to sue for actual damages. The trial court's conclusion that the liquidated damage clause was avoidable as a penalty is reversed, as is the award of damages for a broker's commission. This matter is remanded to the District Court of the Fifth

Judicial District of the State of Idaho, Blaine County, for a recalculation of damages in accordance with this opinion. Each party shall bear their own attorney fees.

BISTLINE, JOHNSON and McDEVITT, JJ., concur.

JOHNSON, Justice, concurring:

I concur in the Court's opinion and write only to point out that, in my opinion, in light of the holding in Part II, Part III is *dicta.*

BAKES, Justice Pro Tem., dissenting:

This case should be resolved by an application of basic contract law concerning offers and counteroffers. Mr. Lipsky offered in writing to purchase Mrs. Wayne's property. This was his third offer, the two previous offers having been rejected by Mrs. Wayne. Lipsky's third offer to purchase the property was prepared on a printed real estate earnest money agreement form, and contained the express provision that, "Buyer's offer is made subject to the acceptance of Seller on or before twelve o'clock midnight of October 2, 1987." Mrs. Wayne did not accept the offer by October 2, 1987, apparently not even being aware of it until she returned to Blaine County on October 12, 1987, at which time she attempted to accept the offer by signing it.

The law is clear that, where an offer contains a limitation "of the right to accept to a specific day or hour, it is clear that if this day or hour has passed no effectual acceptance can be made." Samuel Williston, *A Treatise on the Law of Contracts,* ¶ 63 (3d ed. 1955). *Snow's Auto Supply, Inc. v. Dormaier,* 108 Idaho 73, 76, 696 P.2d 924, 927 (Ct.App.1985) ("[W]hen signed earnest money offers expired, they lost their legal potential to ripen, upon acceptance, into contracts."); *Williams v. Singleton,* 723 P.2d 421 (Utah 1986); *Bob Barnes Realty, Inc. v. Moore,* 69 Or.App. 435, 685 P.2d 490 (1984); *Coleman v. St. Paul & Tacoma Lumber Co.,* 110 Wash. 259, 188 P. 532 (1920).

Mrs. Wayne could not accept Lipsky's offer on October 12th because, by its terms, the offer had lapsed. There being no offer on October 12, 1987, there could be no acceptance and no contract. The equitable doctrine of waiver cannot substitute for a valid offer and acceptance. You cannot "waive" yourself into a contract, particularly a contract for the purchase of real property where the acceptance, under the statute of frauds, I.C. § 9–503, must be in writing and signed by the party to be charged.

Furthermore, "waiver" requires an intentional relinquishment of a known right. *Hecla Mining Co. v. Star–Morning Mining Co.,* 122 Idaho 778, 782, 839 P.2d 1192, 1196 (1992) ("In order to establish waiver the intention to waive must clearly appear...."); *Tiffany v. City of Payette,* 121 Idaho 396, 825 P.2d 493 (1992) (waiver is a voluntary, intentional relinquishment of a known right or advantage); *Soloaga v. Bannock County,* 119 Idaho 678, 809 P.2d 1157 (Ct.App.1990) (waiver is a voluntary, intentional relinquishment of a known right or advantage); *Brand S. Corp. v. King,* 102 Idaho 731, 639 P.2d 429 (1981). Lipsky refused to close the transaction, so there was no clear intent to waive anything.

In sum, because Lipsky's October 2, 1987, offer expired by its own terms, Wayne's attempt to accept that offer on October 12, 1987, was a nullity and was at best a counteroffer which Lipsky could have accepted had he chosen to. Any such acceptance of Wayne's counteroffer would have to be in writing, signed by Lipsky, as required by the statute of frauds, I.C. § 9–503. There is no document in the record establishing a written acceptance by Lipsky of plaintiff Wayne's counteroffer dated October 12, 1987. Thus, there is no contract. Judgment should have been entered for appellant Lipsky.