689 P.2d 222

**STROUT REALTY, INC., a corporation, Plaintiff-Respondent-Cross Appellant,**

v.

**William MILHOUS and Dorothy May Milhous, husband and wife, and Gary Milhous and Shelley Milhous, husband and wife, Defendants-Appellants-Cross-Respondents.**

No. 14997.

Court of Appeals of Idaho.

Oct. 5, 1984.

Robert E. Williams, III, Jerome (Rettig, Frederickson & Williams, Jerome), for defendants-appellants-cross-respondents.

J. Walter Sinclair, Twin Falls (Benoit, Alexander & Sinclair, Twin Falls), for plaintiff-respondent-cross-appellant.

WALTERS, Chief Judge.

We are asked in this case to determine the liability of a real estate vendor for payment of a broker's commission when the purchaser produced by the broker defaults on the land sale contract after the transaction is closed. The broker brought the purchasers and sellers together, and they entered into an agreement by which the purchasers obligated themselves to pay for the property over a period of two years. The purchasers later defaulted on the contract before the broker had received all of his commission, and the sellers refused to pay the broker. The broker brought suit for recovery of his commission. The case was submitted on the pleadings to the trial court, which entered judgment for the broker for less than the balance due under the broker's employment contract. The sellers urge on appeal that they are not liable for a selling commission, even though the transaction closed, because the purchasers defaulted. We disagree, but because we hold the broker was entitled to his entire commission, we set aside the judgment entered below and remand for entry of judgment consistent with this opinion.

The facts in this case are not disputed. Strout Realty, Inc. (Strout) produced and the Milhouses executed, a listing agreement authorizing Strout to seek a buyer for the Milhouse farm. The agreement stated that the Milhouses would pay a broker's commission in the event Strout procured a ready, willing and able buyer. Sometime later, the Bossermans presented through Strout an offer to purchase the farm. An earnest money agreement was signed on August 19, 1976 in which the Bossermans agreed to pay $255,000 for the property, and the Milhouses obligated themselves to pay Strout a $15,300 sales commission, part of which was paid with hay.[1] A land sale contract was signed pursuant to the earnest money agreement on December 15, 1976 and the Bossermans took possession of the farm. Although they were not obligated to pay the Milhouses any money until April 1, 1977, the Bossermans became responsible as of October 1, 1976 for payment of three mortgages existing against the property. In two years of possession, the Bossermans only paid $5500, which was placed in escrow, to credit towards the broker's commission, leaving a balance due of $13,050.

---

[1] By a separate agreement not involved in this appeal, Strout had obtained a load of hay from the Milhouses and the Milhouses received a

the Milhouses. On March 16, 1977, the Milhouses signed a promissory note evidencing an obligation to pay Strout $13,050, the balance of the commission owed, and assigned their right to receive payment from the Bossermans as security for the note. When the Bossermans defaulted on the April 1, 1977 payment, the Milhouses did not pay the balance of Strout's commission. In an effort to aid performance of the land sale contract, Strout delayed pursuing its claim for the balance of the commission until March 20, 1979, when it filed suit against both the Milhouses and the Bossermans. Upon motion, summary judgment was entered on behalf of Strout against the Bossermans for $13,050; summary judgment against the Milhouses was denied.[2]

The trial court entered judgment for Strout, but only for an amount equal to the $5500 paid to the Milhouses by the Bossermans. The Milhouses on appeal argue that they are not liable for any commission because the Bossermans defaulted on the land sale agreement. In their view, when the Bossermans defaulted the promise to pay Strout a commission became unsupported by consideration because Strout had failed to procure an "able" buyer. We disagree, and remand to the trial court for entry of judgment for Strout on its cross-appeal.

■ In a multitude of cases involving recovery of a real estate broker's commission, the recurring rule of law is that a broker earns his commission when he procures a buyer who is ready, willing and able to purchase on terms acceptable to the seller. *See, e.g., Rogers v. Hendrix,* 92 Idaho 141, 438 P.2d 653 (1968); *Arthen v. Chilleen,* 103 Ariz 133, 437 P.2d 925 (1968); *Pasley v. Barber,* 368 P.2d 549 (Alaska 1962); *Allen v. Sherrelwood, Inc.,* 541 P.2d 1257 (Colo.Ct.App.1975). Whether a ready, willing and able buyer has been produced is a question of fact, *Martin v. Clinton,* 239 Or. 541, 398 P.2d 742 (1965); *Taylor v.*

*Gaudry,* 46 Or.App. 235, 611 P.2d 336 (1980), on which the broker has the burden of proof. *De Harpport v. Green,* 215 Or. 281, 333 P.2d 900 (1959); *Herring v. Fisher,* 110 Cal.App.2d 322, 242 P.2d 963 (1952). Although few cases specify the time at which the readiness, willingness, and ability of the purchaser is to be examined, case authority long has held that a seller who accepts a buyer by signing an earnest money agreement is estopped to deny the buyer was then ready, willing and able. *See Mansfield v. Smith,* 88 Wis.2d 575, 277 N.W.2d 740 (1979); *MacNamara v. Steckman,* 202 Cal. 569, 262 P. 297 (1927); *Wray v. Carpenter,* 16 Colo. 271, 27 P. 248 (1891). We will refer to this rule as the traditional estoppel rule.

Idaho seemingly has adopted this rule. In *Rogers v. Hendrix, supra,* our Supreme Court said:

> [I]f a broker who has contracted with a prospective seller to procure a ready, willing and able purchaser for the sellers' real property presents a buyer ready, willing and able to buy on terms listed by the seller with the broker or on other terms which the seller accepts, in the absence of special conditions in the broker's employment contract, the broker is entitled to his commission.

92 Idaho at 144, 438 P.2d at 656. The *Rogers* court did not decide whether the seller must still pay a commission if the buyer becomes unable to carry out the agreement before it is closed. The rule announced in *Rogers* is still the law in this state. *See Marshall Brothers, Inc. v. Geisler,* 99 Idaho 734, 588 P.2d 933 (1978) ("Upon presentation of an appropriate offer, the brokers performed the contract and were due their commission, regardless of whether an actual sale was concluded with the purchaser they had provided, unless the contract between the parties provided otherwise." 99 Idaho at 738, 588 P.2d at 937); *Garfield v. Tindall,* 98 Idaho 841, 573 P.2d 966 (1978) (the broker satisfied his obliga-

---

**2.** Following default, a number of amendments to the sales contract were executed and the Bossermans guaranteed payment of Strout's

commission in the event they defaulted on the amended contract.

tions under the contract by producing a ready, willing, and able buyer who offered to purchase the property for cash or on any other terms specified by the seller at the closing). *See also Century 21 Quality Properties v. Chandler,* 103 Idaho 193, 646 P.2d 435 (Ct.App.1982) (quoting *Rogers*).

In both *Garfield* and *Marshall Brothers,* the broker produced a buyer who offered to purchase on terms identical to or better than the terms specified in the listing agreements, although no earnest money agreements were signed. The buyers and sellers in *Rogers* entered into an earnest money agreement, but the transaction never closed because the parties could not subsequently come to terms on the required land sale contract. The Supreme Court held in *Garfield* and *Marshall Brothers* that the broker had earned his commission. The court in *Rogers* reversed the trial court and remanded for a new trial, and held that the broker was entitled to a commission if the fact finder concluded that the broker had produced a ready, willing and able buyer.

■ The ability of the prospective buyer to conclude the transaction was not at issue in *Garfield, Marshall Brothers* or *Rogers.* None of the parties in those cases argued that the buyer produced was not an able buyer. This is underscored in *Marshall Brothers* where the court frequently characterized the duty of the broker as one of finding a ready and willing buyer, apparently because the buyer's ability to perform was not at issue. Since the individual brokers were entitled to a commission even though no closing occurred, it is apparent from these cases that the readiness and willingness tests can be determined sometime prior to closing, or even before an earnest money agreement is signed. Thus, the rule of those cases seems to be that, absent a special condition in the broker's employment agreement and absent any misrepresentation or other circumstance giving rise to an equitable right to relief from the obligation to pay a commission, when a broker produces a ready and willing buyer and the buyer's ability to per-

form is not disputed, the broker has earned his commission.

The sellers in this case have not shown any ground for equitable relief. As explained more fully below, the record discloses no special condition in the broker's agreement. However, the sellers do dispute that the buyer procured by Strout was an able buyer. Therefore, this case involves an issue not actually addressed by the prior Idaho cases: What is the relevant point in time for evaluating a buyer's ability to perform? Neither party has urged us to adopt the traditional estoppel rule, which would fix the relevant time as the signing of the earnest money agreement. Rather, Strout maintains that the buyer's ability to perform must be determined at or before the time of closing. The Milhouses believe the ability of the buyer can be examined even after the transaction is closed, and rely on *Ellsworth Dobbs, Inc. v. Johnson,* 50 N.J. 528, 236 A.2d 843 (1967) to support their position.

*Ellsworth Dobbs* actually supports the premise advocated by Strout. That case involved a buyer who defaulted before the transaction closed. Because the buyer was financially unable to close the transaction, the *Ellsworth Dobbs* court held that the broker had failed to produce an able buyer and therefore had not completed performance entitling him to a commission. According to the New Jersey rule announced in *Ellsworth Dobbs,* a "broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) *the purchaser completes the transaction by closing the title in accordance with the provisions of the contract."* 236 A.2d at 855 (emphasis added). Implicitly, the court held the ability of the buyer to perform is to be determined as of the time of closing. Like the traditional rule preventing the seller from disputing the ability of the buyer after an earnest money agreement is signed, the *Ellsworth Dobbs* rule is one of estoppel. Once the vendor accepts the buyer produced by the

broker by signing an earnest money agreement and title is subsequently transferred at a closing, or whatever is necessary to close is accomplished, the seller is estopped to dispute the financial ability of the buyer. Thus, by fixing the closing as the time to determine a buyer's ability to perform, *Ellsworth Dobbs* modifies the traditional estoppel approach.

A number of courts have considered the unjust results obtained under the traditional estoppel rule and have expressly or implicitly adopted the *Ellsworth Dobbs* rationale. In *Tristram's Landing, Inc. v. Wait,* 367 Mass. 622, 327 N.E.2d 727 (1975), the purchaser produced by the broker failed to appear at the closing. The court, adopting the rule in *Ellsworth Dobbs,* denied recovery for the broker and stated, "Reason and justice dictate that it should be the broker who bears the burden of producing a purchaser who is not only ready, willing and able at the time of the negotiations, but who ·also consumates the sale at the closing." 327 N.E.2d at 731. The Oregon Supreme Court made it clear that the financial ability to close the transaction satisfies the able test under the *Ellsworth Dobbs* analysis. The Oregon court stated in *Setser v. Commonwealth, Inc.,* 256 Or. 11, 470 P.2d 142 (1970):

> It should be emphasized that the adoption of this *[Ellsworth Dobbs]* rule does not mean that the buyer must completely perform all of the terms of an installment contract of sale before the broker is entitled to his commission. Thus, if the broker has done everything necessary under the contract to close the sale and there remains only the payment of future installments, the broker need not wait until the future installments are paid before he is entitled to his commission.

470 P.2d at 147.

We believe the *Ellsworth Dobbs* decision is well reasoned. A real estate vendor usually receives an offer which restricts the period the offer remains open. As a result, the seller may lack the time and means to evaluate the financial ability of the prospective buyer before signing the earnest money agreement. If the buyer submitting the offer is financially irresponsible, it would be iniquitous to say the broker produced an able buyer simply because an earnest money agreement was signed.

■ If the transaction is closed, however, the financial ability of the buyer to perform the contract has usually been evaluated. Frequently, a significant period of time passes between the signing of the earnest money agreement and the closing. For example, the transaction in this case closed nearly four months after the Milhouses accepted the buyer's offer. The time lapse allows the buyer to arrange whatever financial commitments are required by the earnest money agreement. If it is revealed during this period that the buyer lacks sufficient resources to close the transaction, the broker has not produced an able buyer and is not entitled to a commission. *See* D.B. BURKE, LAW OF REAL ESTATE BROKERS 106–12 (1982).

■ By closing the transaction, we believe the seller has demonstrated an acceptance of the buyer's ability to perform, sufficient to support a finding that the broker has produced an able buyer. The seller is thereafter estopped to challenge the financial ability of the buyer. If the purchaser subsequently defaults, the seller's remedy is against the purchaser since the purchaser may be liable for all damages occasioned by his default, including a broker's commission paid by the seller. *See Melton v. Amar,* 83 Idaho 99, 358 P.2d 855 (1961) (when purchaser defaults on land sale contract, seller can recover general and special damages caused by the breach); *Senior Estates, Inc. v. Bauman Homes, Inc.,* 272 Or. 577, 539 P.2d 142 (1975) (in addition to his loss of bargain damages, a seller may recover all those damages contemplated by the parties which are a natural and proximate result of the buyer's breach).

■ We adopt the estoppel theory as modified by *Ellsworth Dobbs.* Here, because the transaction had closed, the trial

court correctly concluded that Strout had completed the requested performance and was entitled to a commission.

 We believe the trial court erred, however, by limiting the commission to the amount the Milhouses had received from the buyer. Absent a special contract condition providing otherwise, or circumstances warranting equitable relief, the broker is entitled to his full commission when he has produced a ready, willing and able buyer and the transaction is closed, even if the buyer later defaults. Here, the trial court entered inconsistent findings regarding the existence of a special condition limiting Strout's right to a commission. The court found that Strout never agreed to release the Milhouses from their obligation to pay the entire commission. But the court also found that Strout agreed to be paid only to the extent the purchasers made payments. Both findings cannot be supported by the record. The finding that no condition limiting Strout's right to a commission was agreed to is supported by substantial, competent evidence and will not be disturbed on appeal. *See Rasmussen v. Martin,* 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). Our search of the record reveals no agreement by Strout to limit its right to receive payment exclusively to funds received from the buyers. That finding is not supported by the record and it is hereby set aside. *Rasmussen v. Martin, supra.* Because the district court correctly held the Milhouses liable for payment of the broker's commission, but incorrectly limited their liability to the amount received from the Bossermans, we vacate the judgment and remand this case for entry of judgment for the full commission agreed to by the parties.

Strout asks for attorney fees on appeal. In the note evidencing the Milhouses' obligation to pay Strout, the Milhouses agreed to pay Strout's reasonable attorney fees in the event suit was initiated to collect on the note. Accordingly, Strout is entitled to attorney fees on appeal.

Costs and attorney fees on appeal to Strout Realty, Inc. Cause remanded.

BURNETT and SWANSTROM, JJ., concur.