CHICAGO TITLE AGENCY OF LAS VEGAS, INC., A NEVADA CORPORATION, APPELLANT, v. MILTON I. SCHWARTZ, RESPONDENT.

No. 23168

April 27, 1993              851 P.2d 419

*Gordon & Silver* and *Thomas H. Fell,* Las Vegas, for Appellant.

*Frederic I. Berkley,* Las Vegas, for Respondent.

---

## OPINION

*Per Curiam:*

Milton I. Schwartz filed an action against Chicago Title Agency of Las Vegas, Inc. for the return of funds that were improperly disbursed by Chicago Title from an escrow account, claiming that the funds were not to be paid until the sale was completed and title was transferred. The district court entered judgment in favor of Schwartz in the amount of $26,400.00. We conclude that the district court erred as a matter of law in determining that Schwartz was damaged by Chicago Title's error, and we reverse the judgment of the district court.

### Facts

Milton Schwartz owned real property located in Las Vegas, Nevada. Schwartz entered into an exclusive right to sell,

exchange or lease listing contract for the property with Susie Chenin, a licensed real estate broker with Jack Matthews and Company. In late 1990, Chenin secured a ready, willing and able buyer for Schwartz's property. Subsequently, Chenin contacted Jennifer Booth, an escrow officer with appellant Chicago Title, to open an escrow for the sale of the property. On January 4, 1991, Chenin opened an escrow at Chicago Title naming Schwartz as the seller and William P. and Lydia Ann Wright as the buyers.

Initially, the sale was understood by Schwartz, the Wrights, Chenin and Booth to be a purchase and sale and the original escrow documents reflected this type of transaction. Schwartz initially directed Booth to draft an order to pay commission, instructing Chicago Title to pay the broker's commission from the funds due Schwartz "at the close of [the] above referenced escrow"; Schwartz later executed that document.

Due to financial problems with the Wrights, Schwartz and the Wrights modified the original transaction from a purchase and sale to a contract of sale. Chenin notified Booth of the change in the structure of the sale, and Booth, in turn, amended the escrow documents to reflect a contract of sale. Booth claims that she inadvertently redrafted the order to pay commission, which now stated that the broker's commission would be paid "at the completion of the contract of sale." No one instructed or authorized Booth to amend the order to pay commission and alter the terms of the commission payment. The district court found that Chicago Title, via Booth, wrongfully, even though inadvertently, changed the way in which the commission was to be paid.

Prior to the close of escrow, Schwartz questioned Booth regarding the method of payment for the broker's commission. Chenin, however, claimed that she did not know of the alteration to the terms and believed that she was to be paid at the close of escrow. In addition, Chenin did not execute her signature on the amended order to pay commission. In February 1991, escrow closed, and Chicago Title paid Jack Matthews the sum of $26,400.00 for its commission per the original order to pay commission. Subsequently, the Wrights defaulted on the contract of sale.

Schwartz filed an action against Chicago Title for the return of the funds that were improperly disbursed by Chicago Title from the escrow account.

The district court after a bench trial entered judgment, findings of fact and conclusions of law. The district court determined that Schwartz owed Jack Matthews the $26,400.00 commission. The court, however, found that Chicago Title, through its agent Booth, "wrongfully changed the way in which the commission [was to] be paid," and thereafter wrongfully paid Jack Matthews

at close of escrow. The district court found that Schwartz therefore was entitled to a judgment against Chicago Title for the $26,400.00 commission wrongfully paid to Jack Matthews.

## Discussion

The sole issue in this case is whether Schwartz was damaged by Chicago Title's actions. Chicago Title does not dispute that it improperly altered the order to pay commission. Nor does it deny that the subsequent disbursement of the real estate broker's commission at the close of escrow did not comply with the amended order to pay commission. Chicago Title, however, argues that even though it erred in altering the order to pay commission, Schwartz was not damaged by such action, and therefore, the district court erred in awarding money damages to Schwartz.

If Chicago Title breached its contractual obligation, or is liable to Schwartz for breach of some other duty, Schwartz must establish that Chicago Title's breach caused him to incur damages and that he is entitled to recover those damages from Chicago Title. Traditionally, whether a case be one in contract, or in tort, the injured party bears the burden of proving that he or she has been damaged. *See, e.g.,* Central Bit Supply, Inc. v. Waldrop Drilling & Pump, Inc., 102 Nev. 139, 142, 717 P.2d 35, 37 (1986).

The district court properly found that Schwartz owed the broker's commission because Chenin earned her commission per the listing contract when she sold the property, regardless of whether the Wrights later defaulted in the contract. The district court stated, "[Schwartz] always owed it. And until it's paid, he still owes it. Now that it's been paid, he doesn't owe it." The court went on to say, "you [Schwartz] have to suffer the consequences of the party not going through with the contract for sale, not Ms. Chenin, and not her commission."

We accept the general principal that real estate brokers earn their commissions on an open listing agreement once they have produced a buyer ready, willing and able to purchase on precise terms. *See* Strout Realty, Inc. v. Milhouse, 689 P.2d 222 (Idaho Ct.App. 1984). A subsequent default by the purchaser will not limit the broker's right to commission without a specific contract to the contrary. *Id.* If a purchaser defaults after closing a transaction, the purchaser is liable for all of the damages caused by his default, including the broker's commission paid by the seller. *Id.* at 226. Therefore, the seller's remedy is solely against the pur-

chaser, and relief may not be gained from the commission paid to the broker. *Id.*

There is no dispute that escrow closed as contemplated by both parties. At the close of escrow, Schwartz received the down payment from the close of escrow, less closing costs and the broker's commission. The law supports the finding that Schwartz was obligated to pay his broker's commission at the close of escrow, regardless of whether or not the buyer subsequently defaulted on the terms of the contract. In this case, there was no provision for a buyer who defaulted after close of escrow. Therefore, the district court properly determined that Schwartz did owe a commission to Chenin and Jack Matthews.

The district court's acknowledgment that Schwartz owed a commission to Chenin, and that no one but Schwartz understood that the commission was not due until the contract price was paid, is inconsistent with the granting of a judgment in the amount of the full commission. The law supports the theory that the broker's commission was owed at the close of escrow, and the facts demonstrate that Chicago Title's modification of the order to pay commission was a unilateral action and not done under the direction of *any* of the parties below. Therefore, the court erred when it concluded that the commission was owed at the completion of the contract of sale, as opposed to the close of escrow.

The court already determined that the commission was owed, and there are no facts, other than Schwartz's own belief, sufficient to support Schwartz's theory that he was not obligated to pay until completion of the contract of sale. Jack Matthews was paid inadvertently by Chicago Title, who in reality thereby accomplished what *all* of the parties mutually understood. If this court were to uphold the judgment as proper, Schwartz would be receiving a windfall in the amount of $26,400.00.

Moreover, in light of the court's determination that Schwartz owed the broker's commission, Schwartz did not suffer any damages as a result of Chicago Title's paying the commission out of the escrow proceeds.

This court has specifically addressed the damage issue as it relates to the premature release of escrow funds and has stated, "In order for liability to result from a premature release of escrow funds, there must be a causal connection between the noncompliance and any resulting damage." Broussard v. Hill, 100 Nev. 325, 330, 682 P.2d 1376, 1379 (1984) (citations omitted). In *Broussard,* this court reversed the trial court's granting of

a directed verdict because a question of fact remained as to whether the escrow holder breached his duty to the detriment of the plaintiff. *Id.* at 330-31, 682 P.2d 1379. The court held that if escrow funds were prematurely released for purposes other than those authorized by the plaintiff, then the question still remains as to whether such expenditures could have in any way harmed the plaintiff. *Id.* at 330, 682 P.2d at 1379.

Chicago Title maintains that although the district court acknowledged that Chicago Title improperly made a unilateral modification to the order to pay commission and nevertheless paid the commission pursuant to the first order concerning the payment of a commission, the court did recognize the damage issue. The court stated:

> The only resolution of this, since Chicago Title made the error, is that it is their problem. That it was paid at the wrong time[.] [H]owever, the question remains, Mr. Berkley [Schwartz's counsel], what are the damages. [Schwartz] owed a commission. He paid a commission. So you are going to have to tell me what the damages are. . . . [Chicago Title is] a disinterested third party and they made a mistake. I am asking what injury was caused by that mistake?

Throughout the hearing, the district court continually asked Schwartz to identify what, if any, damages he sustained and then the district court finally found that Chicago Title had the burden to correct the error. Further, the court stated, "I put all the burden upon Chicago Title since they are the ones that fouled up the whole thing." The district court was correct in finding that Chicago Title was responsible for making Schwartz whole; however, the district court erred when it did not require Schwartz to prove his actual damages.

Schwartz never informed the district court, nor has he informed this court, what damages he actually suffered. He simply states that he should have been given the money as required by the modified order to pay commission. Schwartz unsuccessfully attempted to argue to the district court that he intended to modify the order to pay commission in order to guard specifically against subsequent default by the purchaser. The district court flatly rejected that and responded, "No; no; no, I don't see it that way, Counsel. [Schwartz] would owe Susie Chenin her commission whether the contract for sale was completed or not. She earned her commission. She sold it." Schwartz's counsel, in closing argument, later conceded that Schwartz owed the money to Chenin and stated, "If [Schwartz] is under an obligation to pay her in five years, and *indeed he is,* then he will pay her at that time." (Emphasis added.)

In conclusion, the district court erred as a matter of law in granting Schwartz monetary damages in the sum of $26,400.00. Although Chicago Title disbursed the broker's commission from the escrow account, Schwartz, by his own admission, *did* owe the money to the broker. Schwartz has not shown that he sustained damages as the result of any breach by Chicago Title.

Chicago Title's actions did not cause Schwartz any monetary damages. He owed the broker's commission and was obligated to pay it. Upholding the district court's judgment would allow Schwartz to turn Chicago Title's inadvertence (which, in reality, was proper according to the original agreement and the understanding between Chenin and Schwartz) into an unwarranted windfall.

For the reasons specified above, we reverse the judgment entered below.