# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 52189

| | |
|---|---|
| RE/MAX PRESTIGE, a real estate brokerage, and its broker, DAREN LONG, | )<br>)  Filed: March 6, 2026<br>)<br>)  Melanie Gagnepain, Clerk<br>) |
| Plaintiffs-Respondents, | )<br>) |
| v. | )<br>) |
| SUSAN L. MATTSON, | )<br>) |
| Defendant-Appellant. | )<br>)<br>) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

Judgment awarding damages, interest, costs, and attorney fees for breach of contract, <u>affirmed</u>.

Blaser Oleson & Lloyd, Chtd.; Jeromy W. Pharis, Blackfoot, for appellant.

Carey Law, PLLC; Donald F. Carey, Idaho Falls, for respondents.

LORELLO, Judge

Susan L. Mattson appeals from the district court's judgment awarding damages, interest, costs, and attorney fees for breach of contract. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mattson owns a parcel of real property in Bingham County, which she wished to sell to a buyer intending to keep the property as farmland. On September 15, 2022, Mattson entered into a seller-representation agreement (the contract) for a term of six months with Connie Clawson, acting as the agent for the broker, and Daren Long, acting as the broker of Re/Max Prestige. The contract stated, "SELLER, Susan L. Mattson retains Daren Long, Broker of RE/MAX Prestige as

1

SELLER'S exclusive Broker to sell." The contract further provided that Mattson agreed to sell the property for $360,000, and stated:

[6] (A) If Broker or any person, including SELLER, procures a purchaser ready, willing and able to purchase, transfer or exchange the Property on the terms stated herein, or on any other price and terms agreed to in writing, the SELLER agrees to pay a total brokerage fee of 6% of the contract or purchase price . . . Of this total brokerage fee, 3% of the contract price will be shared with the cooperating brokerage unless otherwise agreed to in writing.

On September 19, Mattson informed Clawson that Justin Oleson wanted to purchase the property. Clawson spoke with Oleson on the phone that day and he expressed a belief that the property was only worth $200,000. Oleson accused Clawson of listing the property for $360,000 because she intended to sell the property to be developed, rather than seeking a buyer intending to use the property to farm as Mattson desired. Clawson responded that was not the case and that she would inform Mattson that Oleson was not interested in purchasing the property. Shortly after this phone call, Oleson went to Mattson's house, after which they executed a handwritten agreement signed by Mattson, Oleson, and Mattson's brother, agreeing that Mattson would sell Oleson the property for $200,000. Communications subsequently broke down between Clawson and Oleson, at which time Clawson directed Oleson to direct any future communications regarding the property to Long.

On September 21, Clawson presented Mattson with an offer from another buyer to purchase the property for the full listing price of $360,000. This buyer was utilizing a loan program that required the property to be used as farmland to satisfy Mattson's wishes. However, Mattson never accepted the offer or inquired about the buyer's intended use of the property and, instead, expressed her intent to ask Oleson to increase his offer price.

Over a series of emails exchanged between September 21 and September 26, Long inquired as to whether Oleson intended to "prepare a more formal and legible purchase agreement" as he was, at the time, a licensed attorney.[1] Oleson did not respond to this inquiry. On March 16, 2023, Re/Max Prestige and Long filed a complaint against Mattson for breach of contract, seeking to recover the 6 percent commission based on the $360,000 offer, which amount totaled $21,600. A bench trial was subsequently held. At the conclusion of evidence, Mattson moved to dismiss the

---

[1]     Oleson was disbarred from the Idaho State Bar on April 4, 2025.

action arguing Re/Max Prestige and Long did not have standing. The district court ordered the parties to submit supplemental briefing on this issue.

Re/Max Prestige and Long filed motions to substitute or amend the complaint to include All-Around Realty, LLC, as a real party in interest. Mattson opposed these motions. The district court subsequently held a hearing and issued findings of fact and conclusions of law. The district court found Mattson breached the contract and Long was entitled to recover $21,600 in commission fees from Mattson. Mattson filed a motion to reconsider, which the district court denied. The district court then entered the judgment, which included an award of costs and attorney fees to Re/Max Prestige and Long, as well as pre- and post-judgment interest on the damages previously awarded. Mattson appeals.

## II.

## STANDARD OF REVIEW

Where a trial court sits as a finder of fact without a jury the court is required to enter findings of fact and conclusions of law. I.R.C.P. 52(a); *Est. of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994). Our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988). Thus, we defer to findings of fact that are not clearly erroneous, but we freely review the trial court's conclusions of law reached by applying the facts found to the applicable law. *Staggie v. Idaho Falls Consol. Hosps.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986). Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011). Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

# ANALYSIS

Mattson argues that Re/Max Prestige lacked standing to file the underlying lawsuit because Re/Max Prestige is an assumed business name for All-Around Realty that is not properly registered with the Idaho Secretary of State and thus not a separate legal entity with standing to sue. While the district court took judicial notice of the legal relationship between Re/Max Prestige, Long and All-Around Realty, Mattson asserts this was error. Mattson further contends that Long did not have standing because he is not listed as a designated broker of Re/Max Prestige. Mattson argues the district court erred in concluding that Re/Max Prestige and Long did not breach their statutory duties owed to Mattson regarding the formation of a contract with Oleson. Finally, Mattson argues that, in the event this Court holds that the district court correctly denied her motion to dismiss, the district court erred in calculating damages awarded to Re/Max Prestige and Long. In response, Re/Max Prestige and Long assert the record reflects that: the district court did not err in denying Mattson's motion to dismiss for lack of standing; the district court did not err in concluding that Re/Max Prestige and Long did not breach any statutory duties; the district court correctly calculated damages; this appeal is frivolous; and Re/Max Prestige and Long are entitled to costs and attorney fees on appeal. We hold that Mattson has failed to show any error by the district court.

## A.    Judicial Notice

A trial court's decision to take judicial notice under I.R.E. 201 is an evidentiary ruling, which we review for an abuse of discretion. *Chaput v. State*, 168 Idaho 774, 777, 487 P.3d 366, 369 (2021); *Rome v. State*, 164 Idaho 407, 413, 431 P.3d 242, 248 (2018). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Idaho Rule of Evidence 201 allows a court to judicially notice a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose

accuracy cannot reasonably be questioned." I.R.E. 201(b)(2). A party is "entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." I.R.E. 201(e).

On appeal, Mattson contends the district court abused its discretion by misstating the legal relationship between Re/Max Prestige, Long, and All-Around Realty. At the conclusion of the trial, the district court stated:

> This Court takes judicial notice of the fact that in the records of Idaho's Secretary of State, Long is the designated broker for All-Around Realty, L.L.C., doing business as Re/Max Prestige. Within the same record, [Clawson] and Long are listed as the managers of All-Around Realty, L.L.C. [Clawson's husband] is listed as a member of All-Around Realty, L.L.C. [Clawson and her husband] do business under the assumed name Re/Max Prestige.

(footnotes omitted). In addition, the district court took judicial notice that "Long's license with the Idaho Real Estate Commission lists him as the designated broker for All-Around Realty, L.L.C., which does business as Re/Max Prestige." The language of I.R.E. 201(e) provides that a party making a timely request "is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." Additionally, if the trial court "takes judicial notice before notifying a party, the party on request is still entitled to be heard." I.R.E. 201(e). Trial courts should construe the rules so as to "administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." I.R.E. 102.

Under the plain language of I.R.E. 201(e), a party challenging the propriety of a trial court's judicial notice and the nature of the facts the trial court noticed is required to request a hearing on the matter. Such a request gives the trial court the opportunity to rule on the party's challenge. This decision in turn forms the basis for appellate review. Absent a request to be heard on a challenge, the party fails to preserve the issue for appeal. *Chaput*, 168 Idaho at 778, 487 P.3d at 370.

Mattson did not challenge the district court's judicial notice and thus failed to preserve the issue for appeal. Mattson had the opportunity to challenge the district court's judicial notice during the hearing on the motion for reconsideration. Regardless, any possible error was inconsequential. Idaho Rule of Civil Procedure 61 provides that, unless justice otherwise requires, no error in admitting evidence is grounds for vacating, modifying, or otherwise disturbing a judgment or order. "At every stage of the proceeding, the court must disregard all errors and defects that do

not affect any party's substantial rights." *Id.* In this case, the district court's possible error in interpreting the legal relationship between Re/Max Prestige, Long, and All-Around Realty was inconsequential because, as explained below, Long had standing to bring this suit, both as a real party in interest and as a representative of Re/Max Prestige.

**B.      Standing**

To satisfy the requirement of standing, a litigant must allege an injury in fact, a fairly traceable causal connection between the claimed injury and the challenged conduct, and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury. *Sec. Fin. Fund, LLC v. Thomason*, 153 Idaho 343, 347, 282 P.3d 604, 608 (2012). An action must be brought in the name of the real party in interest. *Id.* Idaho Rule of Civil Procedure 17(a)(1)(G) allows a party "with whom or in whose name a contract has been made for another's benefit" to prosecute an action in "their own name without joining the person for whose benefit the action is brought." Whether a party has standing as the real party in interest is an issue that may be raised at any time. *Med. Recovery Servs., LLC v. Eddins*, 169 Idaho 236, 242, 494 P.3d 784, 790 (2021). Idaho Rule of Civil Procedure 17(a)(3) provides that a trial court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Once ratification, joinder, or substitution occurs, "the action proceeds as if it had been originally commenced by the real party in interest." I.R.C.P. 17(a)(3). Jurisdictional issues, like standing, are questions of law. *Med. Recovery Servs. LLC,* 169 Idaho at 242, 494 P.3d at 790. Over questions of law, we exercise free review. *Kawai Farms, Inc. v. Longstreet*, 121 Idaho 610, 613, 826 P.2d 1322, 1325 (1992); *Cole v. Kunzler*, 115 Idaho 552, 555, 768 P.2d 815, 818 (Ct. App. 1989).

Mattson contends that Long lacks standing because he was not correctly listed as a broker for Re/Max Prestige on the filings with the Idaho Secretary of State. However, Long is a party to the contract at issue, as it states "SELLER, [Mattson] retains [Long], Broker of Re/Max Prestige as SELLER'S exclusive Broker to sell." Pursuant to I.C. § 54-2083(4), a "brokerage" is defined as a "licensed designated broker, the licensed real estate business represented by that broker and its associated licensees." A "designated broker" is defined as "an individual who is licensed as a real estate broker in Idaho and who is designated by the brokerage company to be responsible for

the supervision of the brokerage company and the activities of any associated licensees in accordance with this chapter." I.C. § 54-2083(9). The broker is responsible for executing a brokerage representation agreement that meets the minimum qualifications set forth in I.C. § 54-2050.

In this case, the contract was a brokerage representation agreement as described in I.C. § 54-2050. Mattson violated the contract when she agreed to sell the property to Oleson during the contract period with Long. According to the contract, Long was entitled to a commission for the sale of the property and, as such, suffered an injury in fact when Mattson breached the contract.

Mattson also asserts that Re/Max Prestige does not have standing because it is not a separate legal entity. Clawson is listed with the Idaho Secretary of State as doing business as Re/Max Prestige. However, as Clawson is a party to the contract, and is listed as doing business as Re/Max Prestige, she also had standing to sue for violation of the contract. Furthermore, Long had standing to bring a suit on behalf of Re/Max Prestige under I.R.C.P. 17 as the representative of a party for whom the contract was made to benefit. Even if the district court erred in its description of the legal relationship between the involved entities, both Long and Re/Max Prestige are appropriate plaintiffs with standing to sue on the breach of contract claim against Mattson.

## C.    Breach of Statutory Duties

Mattson claims the district court failed to recognize that Re/Max Prestige and Long breached duties owed to Mattson as set forth in I.C. §§ 54-2083, 54-2086, and 54-2087. Mattson contends that, pursuant to I.C. § 54-2083(7), Oleson was a customer, which is defined in the statute as "a buyer or seller, or prospective buyer or seller, who is not represented in an agency relationship in a regulated real estate transaction." Mattson relies on I.C. § 54-2086(1)(a), which states that a brokerage and its licensees owe a duty to "perform ministerial acts to assist the buyer or seller in the sale or purchase of real estate." Ministerial acts refer to "reasonably necessary and customary acts typically performed by real estate licensees in assisting a transaction to its closing or conclusion." I.C. § 54-2083(12). These duties owed to a customer "are mandatory and may not be waived or abrogated, either unilaterally or by agreement." I.C. § 54-2086(3),

The district court correctly concluded that this argument is meritless because Long communicated over email with Oleson and attempted to ascertain who would draft the contract. Long, as the broker, asked Oleson if, as an attorney, he planned to draft a formal contract for the

property sale. In the alternative, Long offered to have someone from the Re/Max Prestige office draft the contract. Mattson argues that, regardless of Oleson's failure to respond, Long still breached a duty by failing to take affirmative action and draft a contract for the sale of the property. On appeal, Oleson and Mattson appear to have presented an expectation that Long would use the partially illegible napkin agreement, written by Oleson at Mattson's home without Long present, to draft a final contract for the sale of the property. Mattson contends that, because of this failure, Long is no longer entitled to the commission for the sale. This is an inaccurate representation of the events that took place. Long attempted to communicate with Oleson and offered to draft the property sale contract. Oleson did not respond to these requests.[2] Long was not present at the meeting between Oleson and Mattson and thus could not accurately depict their desired terms without further communication from both of them. Oleson initially reached out to Clawson and Long to purchase the property and only pursued Mattson privately after he expressed dissatisfaction with the asking price. Long and Re/Max Prestige procured a buyer for Mattson's property who was willing to pay the asking price of $360,000 and to maintain the property as farmland.[3] Mattson's failure to comply with the contract does not excuse her from paying the commission to Long and Re/Max Prestige as required by the contract.

---

[2]     Idaho Rule of Professional Conduct 5.7 states that a lawyer shall be subject to the Rules of Professional Conduct with respect to the provision of law-related services if the law-related services are provided: (1) by the lawyer in circumstances that are not distinct from the lawyer's provision of legal services to clients; or (2) by a separate entity controlled by the lawyer individually or with others if the lawyer fails to take reasonable measures to assure that a person obtaining the law-related services knows that the services of the separate entity are not legal services and that the protections of the client-lawyer relationship do not exist. Comment 9 to this rule lists such law-related services which includes real estate counseling. Mattson argues that a duty was breached by Long. However, it remains unclear based on the emails from Oleson conveying Mattson's desires to Long and Re/Max Prestige if Oleson was also attempting to represent Mattson as an attorney in her communications with the brokerage. Oleson was using his firm email address and representing Mattson's wishes to Long and Re/Max Prestige in an ambiguous fashion.

[3]     It is worth noting that, regardless of the potential to legally enforce any such provision, there was nothing legible in the agreement between Mattson and Oleson that stipulated the property would remain undeveloped, in spite of the transferable division rights attached to the property. Oleson's oral promise to Mattson that the property would remain undeveloped would

**D.      Calculation of Damages**

In an action for breach of contract, only such damages will be allowed as fairly compensate the injured party for his loss. *Gilbert v. City of Caldwell*, 112 Idaho 386, 395, 732 P.2d 355, 364 (Ct. App. 1987). The law of damages in breach of contract claims seeks to place the aggrieved party in the same economic position the party would have had if the contract had been performed. *Id*. The determination of the correct measure of damages is a question of law this Court reviews de novo. *Gen. Auto Parts Co., Inc. v. Genuine Parts Co*., 132 Idaho 849, 854, 979 P.2d 1207, 1212 (1999); *see Basic Am., Inc. v. Shatila*, 133 Idaho 726, 745, 992 P.2d 175, 194 (1999).

Mattson argues that the damages calculated by the district court were inaccurate. Mattson contends that Long and Re/Max Prestige were only entitled to 3 percent of the $360,000, rather than the 6 percent awarded by the district court. A broker earns a commission when he or she procures a buyer who is ready, willing, and able to purchase on terms acceptable to the seller. *Strout Realty, Inc. v. Milhous*, 107 Idaho 330, 332, 689 P.2d 222, 224 (Ct. App. 1984). Whether a ready, willing, and able buyer has been produced is a question of fact on which the broker bears the burden of proof. *Id*. If the failure of completion of the contract results from a wrongful act or interference of the seller, the broker's claim is valid and must be paid. *Margaret H. Wayne Tr. v. Lipsky*, 123 Idaho 253, 260, 846 P.2d 904, 906 (1993).

The district court awarded 6 percent of $360,000, which was the bargained-for commission Mattson agreed to in the contract. The district court concluded that Long was entitled to receive the commission percentage based on the listing price, which had been offered by the prospective buyer procured by Re/Max Prestige and Long. The offer for $360,000 served as proof that Oleson was mistaken in his representation of the value of the property. Mattson argues that, because the prospective buyers were represented by another brokerage, Re/Max Prestige and Long would have only received 3 percent under the contract, with the other 3 percent commission awarded to the participating brokerage representing the buyer.

As the district court correctly concluded, Long was owed 6 percent commission for successfully procuring a desirable buyer for Mattson. The commission became due when Mattson

---

be unenforceable because it was not included in their handwritten agreement. *See* I.C. § 9-503 to I.C. § 9-505.

breached the contract. Whether Re/Max Prestige and Long kept all 6 percent or owed 3 percent to a cooperating brokerage is a question that arose after Mattson breached by contracting with Oleson to sell the property without Long. To put Re/Max Prestige and Long in the same economic position they would have been in had the contract been performed requires awarding the 6 percent commission rate agreed to in the contract. The district court did not err in calculating the award of damages.

**E.      Costs and Attorney Fees on Appeal**

Mattson argues that she is entitled to costs and attorney fees on appeal. Because Mattson is not the prevailing party on appeal, she is not entitled to an award of costs or attorney fees.

Re/Max Prestige and Long also request attorney fees on appeal, arguing that Mattson's appeal is frivolous. Pursuant to I.C. § 12-121 and I.A.R. 41, an award of attorney fees may be granted to the prevailing party and such an award is appropriate when the court finds that the appeal has been brought or defended frivolously, unreasonably, or without foundation. An award of attorney fees is appropriate if the appellant only invites this Court to second-guess the trial court on conflicting evidence, or if the law is well settled and the appellant has made no substantial showing that the lower court misapplied the law, or no cogent challenge is presented with regard to the trial court's exercise of discretion. *Pass v. Kenny*, 118 Idaho 445, 449-50, 797 P.2d 153, 157-58 (Ct. App. 1990). This standard is satisfied in this case. Accordingly, Re/Max Prestige and Long are entitled to costs and attorney fees on appeal.

**IV.**

**CONCLUSION**

Mattson has failed to show that Re/Max Prestige and Long lacked standing, that they breached a statutory duty, or that the district court erred in calculating damages. Accordingly, the district court's judgment awarding damages, interest, costs, and attorney fees for breach of contract is affirmed. Costs and attorney fees are awarded to Re/Max Prestige and Long on appeal.

Judge HUSKEY and Judge Pro Tem MELANSON, **CONCUR**.